683 P.2d 1166

**In re the Marriage of Veronica Ann GARRETT, Petitioner-Appellee and Cross-Appellant,**

v.

**Roger Earl GARRETT, Respondent-Appellant, and Cross-Appellee.**

**No. 1 CA–CIV 6069.**

Court of Appeals of Arizona, Division 1, Department D.

Nov. 25, 1983.

On Motion for Reconsideration Feb. 23, 1984.

Review Denied May 22, 1984.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Philip C. Gerard, Phoenix, for petitioner-appellee and cross-appellant.

John S. Schaper, Phoenix, for respondent-appellant and cross-appellee.

## OPINION

JACOBSON, Chief Judge.

The basic question presented by this appeal is whether the rights flowing from an attorney-husband's contingent fee contracts entered into during marriage but which were not fully performed at the time of dissolution are community or separate property.

The trial court held that the contracts had been substantially "earned" prior to dissolution, were community property and awarded the wife one half of the fees attributable to such contracts. The trial court also retained continuing jurisdiction over these contracts to effectuate its order.

The husband has appealed and the wife has cross-appealed.

The facts are not in material dispute. The respondent-appellant, Roger Earl Garrett (Husband), began practicing law in Arizona in 1967. On July 29, 1977, the husband and petitioner-appellee, Veronica Ann Garrett (Wife) were married. The husband continued to practice law and the wife continued her pre-marriage occupation as a school teacher.

While the parties were married, the husband entered into two separate contingency fee contracts representing two sets of plaintiffs in two different personal injury lawsuits. These lawsuits have been designated by the parties as the "Boyd-DeMuth litigation" and the "Yontz-McMahon litigation." Both of these contracts provided that the husband was to receive one-third of any amounts collected and in the event the plaintiffs were unsuccessful, he was to receive nothing.

At the time of the dissolution hearing, neither of these two cases had reached the point where the husband was entitled to receive a fee from his clients. However, as to the Yontz-McMahon litigation, the husband had advised his clients to accept the sum of $103,000 in settlement of two of the four claims involved in that lawsuit and had rejected offers of settlement of $250,000 and $175,000 for the remaining claims.[1] The husband had spent 60 to 65 hours on this litigation prior to the dissolution. As to the Boyd-DeMuth litigation, the husband had logged 90 hours in the case prior to the dissolution hearing, but no demand or offer of settlement had been made and no motion to set had been filed.[2]

The wife presented expert testimony at the time of hearing as to the value of the claims in both cases. In addition, the husband testified as to other cases in which he had worked prior to the dissolution which had not been billed.

As previously indicated the trial court found, as to the Yontz-McMahon litigation, that the case had progressed to a point where the contingent fee contract had been "wholly earned" by the husband. As to the Boyd-DeMuth litigation, the trial court found that "the Respondent should be much farther along with the preparation at this time; that in light of Respondent's control of past and present work in progress, the Court must find in equity that the fees in the Boyd and DeMuth cases have also been earned."

Based upon this determination, the trial court awarded one-half of any fees to be received in these two cases to the wife and reserved "jurisdiction to follow the progress of trial and settlement of the contingent fee contracts to the end that Petitioner's interest therein shall be protected."

In addition, the trial court denied the wife's request for attorney's fees and refused to allow the wife to share in fees earned but unbilled at the time of dissolution. The husband has appealed and the wife has cross-appealed.

## HUSBAND'S APPEAL

The husband argues that as to the contingent fee contracts, based upon the nature of these contracts and the case of *In re Estate of Monaghan*, 60 Ariz. 342, 137 P.2d 393 (1943), the fees flowing from such contracts are his separate property as they will be received after dissolution and therefore the trial court lacked jurisdiction to award one half of these fees to the wife. In the alternative, the husband argues that if the wife has an interest in the fees to be received under these contracts the trial court erred in not considering the tax liabilities flowing to the parties and that in any event the wife's interest must be valued as to what the husband would have been entitled to receive from his client at the time of dissolution—the reasonable value of the services rendered at that time.

1. At the time of oral argument in this matter, the court was informed that both the Yontz-McMahon litigation and the Boyd-DeMuth litigation had been completely settled and the fees

received therefrom were placed in trust to be disbursed subject to the outcome of this appeal.

2. See footnote No. 1.

We turn first to the husband's contention concerning the separate property nature of these contracts. The husband's argument is that contingent fee contracts are truly "contingent" that is, any fees due under such contracts are "earned" only after the contingency upon which the fee is based is realized. *See State Farm Mutual Insurance Co. v. St. Joseph's Hospital*, 107 Ariz. 498, 489 P.2d 837 (1971); *Neale v. Hinchcliffe*, 21 Ariz. 452, 189 P. 1116 (1920). Moreover, the husband argues that the peculiar nature of this type of contract was recognized in *In re Estate of Monaghan, supra*, where the Supreme Court held that fees received under the wife's/attorney's contingent fee contract prior to separation were community property, but the balance of those fees received after separation were her separate property. (Under former § 63–301, A.C.A. 1939, income earned by a wife while living separate and apart from her husband was the wife's separate property.)

While we agree that *In re Estate of Monaghan* appears to support the husband's position, we are not convinced that this case is controlling. First, the nature of the contingent fee contract was not discussed. Second, there existed a property settlement agreement in that case which would have supported the court's finding that moneys received after the separation belonged to the wife. Finally, because of the lack of any legal analysis as to how the court reached its decision, we tend to agree with the dissent that "it is not possible to say on which ground it is based." (Ross, J., dissenting, 60 Ariz. at 346, 137 P.2d at 394.)

Moreover, while it is true that an attorney is not entitled to the full benefit of his contract until the contingency upon which it is based is fulfilled, this does not mean that valid enforceable contract rights do not exist regardless of its fulfillment. For example, an attorney under a contingency fee contract who is discharged prior to fulfillment of the contract is entitled to reimbursement for the reasonable value of his services. *State Farm Mutual Insur-*

*ance Co. v. St. Joseph's Hospital, supra,* or his heirs are so entitled in the event death of the attorney precluded fulfillment of the contract. *Neale v. Hinchcliffe, supra; see also* Annot., 33 A.L.R.3d 1375 (1970). It is therefore clear that a contingency fee contract does not involve a mere expectancy in which no enforceable rights exist in the holder of the expectancy. *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). Based upon these considerations, we hold that an attorney's contingency fee contract is a valuable property right, though the contingency upon which it is based has not been fulfilled.

The question then becomes whether the community is entitled to an interest in that property right and if so, the value of that community interest. In answering this question, we reject the husband's contention that since the ultimate fee may not be acquired until after the dissolution, this automatically makes the fee separate property under A.R.S. § 25–213 as property "acquired" while the husband is single. We have previously noted that a contingency fee contract has enforceable rights prior to its full performance. Therefore, considering the nature of a contingency fee contract (the performance of continuing services), it is not the existence of rights under that contract which must abide a future event, but an assessment of the value of those rights. This principle is recognized in those cases which hold that where community labor is expended in the acquisition of future pension benefits, whether the right to those benefits is vested or non-vested at the time of dissolution, the community is entitled to share in those benefits to the extent which community labor contributed to their acquisition. *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977); *Johnson v. Johnson*, 131 Ariz. 38, 638 P.2d 705 (1981).

We believe the underlying rationale of these cases to be applicable here. That rationale is that the community is entitled to be reimbursed for the community labor expended in perfecting or protect-

ing a future asset. In this regard, we reject a per se rule as to the ultimate character of the property being separate or community based upon when the contract was made. The community is not entitled to the services expended by one of its partners either before marriage or after the marriage has terminated. *Warren v. Warren*, 2 Ariz.App. 206, 407 P.2d 395 (1965); A.R.S. § 25–211. However, the community is entitled to such labors expended during marriage. *Everson v. Everson*, 24 Ariz. App. 239, 537 P.2d 624 (1975). Carrying these principles to their logical conclusion, it is theoretically immaterial if the contingency fee contract was entered into prior to marriage, if after marriage community labor was expended to bring it to fruition. For the same reasons, it is immaterial if the contract was entered into during marriage, but no community labor was expended to fulfill the contract. When the nature of the asset requires continuing services to reap an ultimate benefit (such as contingency fee contracts and pension plans) it is not when the inception of services begin (either before or after marriage) which is material in assessing the community interest, but rather the amount of community labor expended in perfecting the ultimate benefit.[3]

■ Based upon this analysis, it is clear that the attorney's services performed during the marriage in fulfillment of the contract are community property and the community is entitled to what the percentage of the time expended as community labor bears to the time expended in reaching the ultimate recovery. *See Due v. Due*, 342 So.2d 161 (La.1977); *Waters v. Waters*, 75 Cal.App.2d 265, 170 P.2d 494 (1946).

■ In this regard, we reject the husband's contention that the value of the

community services is to be based upon a reasonable hourly rate. This overlooks the very nature of the contract—an all or nothing proposition. It is as unfair to require the attorney/spouse to pay the other spouse for reasonable services rendered when ultimately no fee is earned because the litigation was lost as it would be to require the non-attorney/spouse to accept a sum based upon an hourly fee when the attorney/spouse receives compensation far exceeding that amount. The contract sets the value of the services. Depending upon subsequent circumstances, the value of the services may be worth nothing, may be worth only a reasonable hourly fee, or may be worth the full value of the contract. In this regard, we approve of the trial court's continuing jurisdiction over this matter to monitor the value of the services.

We have held that only that portion of the labor expended during marriage in fulfillment of the contract is to be considered community property. The trial court, however, found that as to the Yontz-McMahon litigation, all the labor necessary to bring the contract to fruition had been expended during the marriage and as to the Boyd-De-Muth litigation, that the contract could have been fulfilled during marriage if the husband had diligently applied himself. The wife argues that based upon these factual determinations, the trial court properly determined that the fees were "earned" during marriage and therefore subject to equal division.

■ We disagree. We are unaware of any community property principle which allows division of community property based upon a determination that the parties should have worked more diligently to increase the community assets. The law must necessarily presume that during the

---

**3.** This problem could be expressed in classic community property concepts of applying separate or community liens to a separate or community asset. Thus, if the contract arose prior to marriage, the ultimate asset could be classified as separate property, but the community would have a lien on that separate property for the value of the community services expended in "improving" that asset. *See Potthoff v. Pot-*

*thoff,* 128 Ariz. 557, 627 P.2d 708 (App.1981). The converse would also be true. However, considering the nature of the asset involved, we consider it unnecessary to the legal analysis of the problem to characterize the ultimate asset as either "community" or "separate." The community is entitled to be rewarded for community effort regardless of the characterization of the ultimate asset.

term of the marriage the parties will expend their ultimate capabilities in obtaining community assets for their mutual benefit and welfare. However, the court is aware that at some point prior to the final termination of the marriage (the entry of a decree of dissolution), the motive to increase community assets for the mutual welfare of both parties may not only lessen, but cease, based upon the realization that the marriage will ultimately fail. Should the court embark upon an inquiry as to when this point was reached and the effect of this human characteristic upon the marshalling of assets? Should the court determine that one month prior to the decree of dissolution being entered, one of the spouses passed up a favorable investment opportunity which would have increased the community assets and awarded division of property based upon what could have been realized by this lost opportunity? We believe not. The concepts of waste and fraud adequately protected the community from the vindictive spouse without embroiling the fact finder in weighing motives for non-productivity or the result of that non-productivity.

Therefore, this matter must be remanded to the trial court for determination of the community interest in the contingent fee contracts based upon the percentage of the number of hours worked during the marriage bears to the total number of hours worked in earning the fee, the community being entitled to that percentage of the fee received.

■ Before leaving this subject, we touch briefly on the husband's contention that the trial court ignored the tax consequences that will flow to the husband by receiving income after dissolution, that is, that the entire fee will be taxable to him as separate property. We disagree. In our opinion, under existing tax decisions, each party must report and pay taxes upon the income we have declared by this opinion to be community property. *See Johnson v. United States,* 135 F.2d (9th Cir.1943).

■ Finally, the husband contends that his overhead expenses should be figured into the division of the contingency fee contract. Again we disagree. First, out-of-pocket expenses are paid for by the plaintiffs. Second, to the extent that overhead expenses were incurred during the marriage, the husband has already had the benefit of those deductions during that marriage. *See In re Marriage of Goldstein,* 120 Ariz. 23, 583 P.2d 1343 (1978). Third, to the extent that the fee received is for services rendered after the dissolution decree, the husband will receive that portion of the fee as his separate property and must pay those expenses related to his separate income.

## WIFE'S CROSS APPEAL

■ The wife raises two issues in her cross-appeal. First, she contends that the trial court failed to divide the accounts receivable of the husband. More specifically, the wife requested an award equal to the value of one-half of the fees to be generated from the 278.8 hours expended in insurance defense matters, which matters had not yet been billed to those insurance companies. The wife correctly points out that those accounts receivables are a marital asset and subject to division as community property. *Mori v. Mori,* 124 Ariz. 193, 603 P.2d 85 (1979). Therefore, that portion of the court's decree which failed to find this asset to be community property is reversed and upon remand, the value of this asset is to be determined and divided as community property.

■ The wife's second contention is that the trial court should have awarded attorney's fees to her because of the "obstructionist course of action by the appellant." However, the wife cites no authority for this court to award attorney's fees to her. The husband suggests that the wife's request for attorney's fees is made pursuant to A.R.S. § 25–324. However, attorney's fees under this statute are awarded to insure that the poorer party has the proper means to litigate the action, *see Countryman v. Countryman,* 135 Ariz. 110, 659 P.2d 663 (1983), not to punish

litigants. There has been no contention here that the wife did not have the proper means to litigate the action in the trial court.

In accordance with this opinion, the judgment of the trial court is reversed in part, affirmed in part and remanded for further proceedings.

KLEINSCHMIDT, P.J., and GREER, J., concur.

## ON MOTION FOR RECONSIDERATION

JACOBSON, Chief Judge.

On November 25, 1983, this court entered its opinion in this matter, which determined that the community had an interest in the husband/lawyer's contingent fee contracts to the extent that the husband had performed services upon these contracts prior to the dissolution of the marriage even though they were not fully performed at the time of dissolution. We further held that the determination of the community interest in those contingent fee contracts was to be

> based upon the percentage of the number of hours worked during the marriage bears to the total number of hours worked in earning the fee....

The wife filed a motion for reconsideration and the husband has filed a petition for review.[1] The wife's motion for reconsideration raises several issues, only one of which needs to be addressed in this supplemental opinion.

The wife agrees that our prior opinion correctly determined that the marital community held an interest in unfulfilled contingent fee contracts. She questions, however, our evaluation of that interest based solely on a "before and after" hourly comparison of time. She suggests that this formula may work fairly well in the single plaintiff versus the single defendant litigation, but may result in an inequitable division in multiple party litigation. The wife

postulates the not unusual situation where multiple defendants exist with various degrees of liability and differing amounts of insurance coverage. In such a situation, some, but not all defendants, may be willing to reach settlements prior to the dissolution of the marriage, but these offers are not accepted because of their effect upon overall settlement or the ability to pursue additional defendants. In such a case, it is theoretically possible that 80% of the total settlement could have been effected prior to dissolution, but because of the inability to settle with all defendants an inordinate amount of time may be expended after dissolution, seeking recovery of the additional 20% of the ultimate recovery. Of course, the converse could also be true. The wife, therefore, urges that not only should the trial court consider the hours spent before and after the dissolution of the marriage, but also should be allowed to consider how the time was spent, the settlement history of the case and any other relevant factor which bears on the community effort to effect recovery of the ultimate fee.

The husband does not directly attack the considerations suggested by the wife, merely contending that the only proper method of determining the community interest in a contingent fee contract, if such an interest exists, is to base that community interest solely on the amount that the husband would be entitled to at the time of dissolution—a fee based upon a reasonable hourly rate. We rejected this evaluation in our previous opinion and see no need to reconsider this contention.

 In absence of any argument that the wife's suggestion is not workable, we believe it has merit. We therefore modify our prior opinion by holding that in evaluating the community interest in a contingent fee contract, the trial court may consider the following factors: the amount of time expended before and after the dissolution, how that time was expended, the settle-

---

**1.** This procedure is now authorized by Rules 22 and 23, Arizona Rules of Civil Appellate Proce- dure.

ment history of the case, and any other relevant factor as may bear on the equitable division of this community asset.

As so modified, our prior opinion is reaffirmed and the motion for reconsideration is denied.

KLEINSCHMIDT, P.J., and GREER, J., concur.